1  ROSENDO GONZALEZ (State Bar No. 137352)
   GONZALEZ & ASSOCIATES, P.L.C.
2  530 S. Hewitt Street, Suite 148
   Los Angeles, California 90013
3  Telephone (213) 452-0070
   Facsimile (213) 452-0080
4  E-mail: rossgonzalez@earthlink.net

5  Proposed Counsel for Ana Espana,
   Debtor and Debtor-In-Possession

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11  In re                    )    BK. No. 2:11-bk28478-SK
                             )         [Chapter 13]
12  ANA ESPANA,              )
                             )
13            Debtor.        )    DEBTOR'S OPPOSITION TO EAST
                             )    WEST BANK'S MOTION FOR
14                           )    RELIEF FROM STAY [4874-4878
                             )    ABBOT ROAD, LYNWOOD, CA];
15                           )    DECLARATIONS OF ANA ESPANA,
                             )    JOSE C. RODRIGUEZ, ALBERTO
16                           )    A. ROMERO AND ROSENDO
                             )    GONZALEZ IN SUPPORT THEREOF
17                           )
                             )    DATE:  June 14, 2011
18                           )    TIME:  8:30 a.m.
                             )    PLACE: Courtroom "1575"
19                           )
                             )
20  _____  )

21  TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE,

22  TO EAST WEST BANK AND TO ITS COUNSEL OF RECORD:

23        The debtor and debtor-in-possession, Ana Espana (the

24  "Debtor"), through her proposed counsel of record, Gonzalez &

25  Associates, A Professional Law Corporation, respectfully submits

26  this opposition to the motion for relief from stay filed by East

27  West Bank (the "Bank" or the "Movant") seeking relief from the

28  automatic stay with respect to the real property commonly

1 | described as 4874-4878 Abbot Road, Lynwood, California 90262 (the

2 | "Abbott Property")(the "Motion for Relief").

3 |

4 | I.

5 | **INTRODUCTION/BACKGROUND**

6 |

7 | A.   This case was commenced by Ana Espana, the debtor and

8 | debtor-in-possession in this bankruptcy case (the "Debtor"), with

9 | the filing of a voluntary petition for protection under Chapter

10 | 13 of Title 11 of the United States Bankruptcy Code on April 28,

11 | 2011.

12 | B.   The Debtor commenced the Chapter 13 case *in pro per*.

13 | She did not file the required schedules and statement of

14 | financial affairs.

15 | C.   Kathy A. Dockery was appointed as the Chapter 13

16 | trustee (the "Trustee").

17 | D.   The initial meeting of creditors was scheduled for May

18 | 27, 2011.  The Debtor appeared and informed the Trustee that she

19 | was in the process of employing counsel and filing a motion to

20 | convert to Chapter 11.

21 | E.   The initial May 27, 2011 meeting of creditors was

22 | continued (for the Debtor to file the motion to convert and

23 | substitution of counsel).

24 | F.   On or about June, 3, 2011, the Debtor filed: (i) a

25 | motion to convert the case from Chapter 13 to Chapter 11, (ii)

26 | proposed order on the motion to convert, (iii) substitution of

27 | counsel form, and (iv) new fully completed petition, schedules

28 | and statement of financial affairs.

1    G.    Prior to the commencement of this bankruptcy case, Jose
2  C. Rodriguez ("Rodriguez") and the Debtor entered into an
3  agreement for the purchase of the real property commonly
4  described as 4874-4878 Abbot Road, Lynwood, California 90262 (the
5  "Abbott Property").

6    H.    As part of the purchase of the Abbott Property, the
7  Debtor and Rodriguez also entered into a transaction for the
8  purchase of the real property commonly described as 4271
9  Pendleton Avenue, Lynwood, California 90262 (the "Pendleton
10 Property") for the amount of $1,205,000.  The two [income rental]
11 properties are located next to each other.

12   I.    With respect to the purchase of the Abbott Property,
13 Rodriguez contributed approximately $310,000.  Similarly,
14 Rodriguez contributed approximately $310,000 for the purchase of
15 the Pendleton Property.  However, and due to the requirements of
16 East West Bank, title and loan for both properties were initially
17 taken under the Debtor's sole name.

18   J.    In that respect, on or about July 23, 2007, the Debtor
19 entered into a promissory note with East West Bank in the
20 principal amount of $770,000 for the Abbott Property (the "Abbott
21 Note")(Loan No. 89222493).  *See*, Exhibit "1" to the Motion for
22 Relief from Stay.  Similarly, and on the same date, the Debtor
23 entered into a promissory note with East West Bank in the
24 principal amount of $770,000 for the Pendleton Property (the
25 "Pendleton Note")(Loan No. 89222491).

26   K.    On or about July 23, 2007, the Debtor also executed a
27 deed of trust as security for the Abbott Note for the benefit of
28 East West Bank (the "Abbott Deed of Trust").  *See*, Exhibit "2" to

1   the Motion for Relief from Stay.  Similarly, and on the same

2   date, the Debtor executed a deed of trust as security for the

3   Pendleton Note for the benefit of East West Bank (the "Pendleton

4   Deed of Trust").

5       L.   After the execution of the Notes and Deeds of Trust,

6   the Debtor and Rodriguez made the monthly payments with respect

7   to the Abbott and Pendleton properties to East West Bank, whether

8   in person, check, money order or cashier's check for 2007 and

9   2008.  In addition, the Debtor and Rodriguez obtained insurance

10  for the two properties with Farmers Insurance Company.

11      M.   With respect to 2009, the Debtor and Rodriguez made all

12  of the monthly payments for the Abbott Property.  Attached hereto

13  and collectively incorporated herein as Exhibit "1" are copies of

14  all of the East West Bank's receipts for 2009 showing the

15  payments for the Abbott Property [Loan No. 89222493].

16      N.   In addition, attached hereto and collectively

17  incorporated herein as Exhibit "2" are copies of the actual

18  cashier's checks and checks paid by the Debtor and Rodriguez to

19  East West Bank for 2009 for the Abbott Property [Loan No.

20  89222493].

21      O.   Similarly, and with respect to 2009, the Debtor and

22  Rodriguez made all of the monthly payments for the Pendleton

23  Property.  Attached hereto and collectively incorporated herein

24  as Exhibit "3" are copies of all of the East West Bank's receipts

25  for 2009 showing the payments for the Pendleton Property [Loan

26  No. 89222491].

27  ///

28  ///

1    P.    Furthermore, attached hereto and collectively

2  incorporated herein as Exhibit "4" are copies of the actual

3  cashier's checks and checks paid by the Debtor and Rodriguez to

4  East West Bank for 2009 for the Pendleton Property [Loan No.

5  89222491].

6    Q.    In addition to making the mortgage payments in 2009 for

7  the Abbott Property, the Debtor and Rodriguez also obtained the

8  required insurance for the Abbott Property.  Attached hereto and

9  collectively incorporated herein as Exhibit "5" are copies of

10  "Accord Evidence of Property Insurance" with Farmers Insurance

11  Company showing coverage for the period between December 1, 2008,

12  through December 1, 2010.

13    R.    Similarly, in addition to making the mortgage payments

14  in 2009 for the Pendleton Property, the Debtor and Rodriguez also

15  obtained the required insurance for the Pendleton Property.

16  Attached hereto and collectively incorporated herein as Exhibit

17  "6" are copies of "Accord Evidence of Property Insurance" with

18  Farmers Insurance Company showing coverage for the period between

19  December 1, 2008, through December 1, 2010.

20    S.    Inexplicably, in the mortgage statement for July 20,

21  2009, issued by East West Bank for the Pendleton Property, it

22  actually represented that East West Bank had advanced and paid

23  $4,604 in insurance.  A copy of East West Bank's July 20, 2009

24  statement for the Pendleton Property is attached hereto and is

25  incorporated herein as Exhibit "7."

26  ///

27  ///

28  ///

1    T.    That was clearly a charge that was not necessary or

2    required and was in direct contradiction of the evidence

3    [insurance coverage obtained and paid by the Debtor and

4    Rodriguez].

5    U.    It appears that this may be a "tactic" of East West

6    Bank to advance insurance payment/coverage in spite of the fact

7    that the property owner has already obtained that property

8    insurance.    In fact, Rodriguez, who also has four (4) other

9    outstanding loans with East West Bank for other properties, has

10   experienced the same "tactic."    Attached hereto and collectively

11   incorporated herein as Exhibit "8" are copies of Rodriguez's

12   purchase of insurance and East West Bank's statement paying for

13   the same property insurance.

14   V.    Again, inexplicably in view of the payments made by the

15   Debtor and Rodriguez for 2009 for the Abbott Property and the

16   Pendleton Property [as well as obtaining the required insurance

17   coverage], on or about August 10, 2009, a notice of default was

18   recorded by East West Bank with respect to the Pendleton Property

19   indicating that the amount of arrears was $20,775.80.    A copy of

20   the notice of default is attached hereto and is incorporated

21   herein as Exhibit "9."

22   W.    East West Bank's August 10, 2009 notice of default was

23   specifically contradicted by the mortgage payments made by the

24   Debtor and Rodriguez with respect to the Pendleton Property for

25   2009.    *See*, Exhibits "3" and "4" [East West Bank's mortgage

26   receipts and cashier's checks and checks for 2009].

27   ///

28   ///

1    X.   It was a total fabrication or misrepresentation of the

2    actual facts.   There was no default as of August 2009 for either

3    property and for either loan.   One of the primary reason for the

4    current status (and mess) of the two properties is that erroneous

5    and improper recorded notice of default.

6    Y.   A notice of foreclosure was apparently recorded with

7    the Los Angeles County's Recorder's Office setting the

8    foreclosure sale for December 23, 2009, for the Pendleton

9    Property.

10   Z.   A copy of a letter dated December 14, 2009, from

11   Cynthia Robinson, special asset coordinator for East West Bank

12   ("Robinson"), to Ruben Languare, a friend of the Debtor who

13   helped her in view of the Debtor's inability to fluently speak,

14   read and write in English ("Languare"), is attached hereto and is

15   incorporated herein as Exhibit "10."

16   AA.   In the December 14, 2009 letter, Robinson represented

17   that the foreclosure sale for the Pendleton Property had been

18   scheduled for December 23, 2011, and that payments for October,

19   November and December 2009 in the collective amount of $15,352.98

20   were missing.   Improperly adding [since the payments had been

21   made] late charges and foreclosure fees and costs, the total

22   amount to reinstate the loan was set at $25,822.44.   *See*, Exhibit

23   "10" [the December 14, 2009 letter].

24   AB.   In spite of the fact that all required payments had

25   been made for the Pendleton Property, on or about December 18,

26   2009, the Debtor and Rodriguez paid $15,422.44 to East West Bank,

27   plus received credit for two payments each in the amount of

28   $5,200 that had been made to East West Bank.   Copies of the: (i)

1   December 11, 2009 cashier's check no. 202538936 in the amount of

2   $5,200 [purchased by Rodriguez and paid to East West Bank], (ii)

3   December 14, 2009 check no. 1028 in the amount of $5,200

4   [personal account of Rodriguez and payable to East West Bank],

5   (iii) December 18, 2009 cashier's check no. 426285740 in the

6   amount of $15,422.44 [purchased by Jose Rodriguez and paid to

7   East West Bank], and (iv) the East West Bank's December 18, 2009

8   loan payment receipt in the amount of $26,622.44 are attached

9   hereto and collectively incorporated herein as Exhibit "11."

10      AC.  **Again and to be clear, the Debtor and Rodriguez paid**

11  **for insurance, late charges and foreclosure related fees and**

12  **costs for 2009 for the Pendleton Property even though there was**

13  **no factual or legal basis for East West Bank to have demanded**

14  **those fees and costs.**

15      AD.  For 2010 and with respect to the Abbott Property, the

16  Debtor and Rodriguez made the monthly mortgage payments to East

17  West Bank for January, February, March and April 2010.  Copies of

18  East West Bank's loan payment receipts for January, February,

19  March and April 2010 are attached hereto and are collectively

20  incorporated herein as Exhibit "12."

21      AE.  Similarly and with respect to the Pendleton Property

22  for 2010, the Debtor and Rodriguez made the monthly mortgage

23  payments to East West Bank for January, February, March, April,

24  May, June and July 2010.  Copies of East West Bank's loan payment

25  receipts for January, February, March, April, May, June and July

26  2010 are attached hereto and are collectively incorporated herein

27  as Exhibit "13."

28  ///

1    AF.   However, and inexplicably, East West Bank issued in

2 January, March and April 2010, four (4) cashier's checks

3 returning payments [for the Abbott Property] to Rodriguez.

4 Copies of the East West Bank's January, March and April 2010

5 cashier's checks made payable to Rodriguez are attached hereto

6 and are collectively incorporated herein as Exhibit "14."

7    AG.   Similarly, and inexplicably, East West Bank issued in

8 March and June 2010, two (2) cashier's checks returning payments

9 [for the Pendleton Property] to Rodriguez.   Copies of the East

10 West Bank's March and June 2010 cashier's checks made payable to

11 Rodriguez are attached hereto and are collectively incorporated

12 herein as Exhibit "15."

13    AH.   In spite of the payments made for 2010 for the Abbott

14 and Pendleton properties [which were partially refunded], East

15 West Bank set foreclosure sales for the two properties for May

16 2010.

17    AI.   Confused, Languare, on behalf of the Debtor and

18 Rodriguez, had a number of communications between May and October

19 2010 with Robinson in attempt to figure out the reason for East

20 West Bank's return of the 2010 payments, East West Bank's

21 overcharges for 2009 and to add Rodriguez to the two loans.

22    AJ.   Unable to resolve the situation, the Debtor and

23 Rodriguez [now desperate] sought in or about October 2010 the

24 assistance of China Arbakar Paul of Sell Express Real Estate

25 ("Arbakar"), Dr. Camile Howard ("Howard") and an attorney, Jack

26 C. Huang ("Huang").   These were individuals who were advertising

27 and promoting themselves as experts in real estate transactions

28 assisting distressed property owners in negotiations with

1  financial institutions.   The Debtor and Rodriguez paid $2,000 to

2  Arkabar and Howard for their assistance.

3      AK.   Between October 2010 and January 2011, there were a

4  number of communications between Arkabar and Robinson in an

5  attempt to resolve the situation.

6      AL.   However, and unbeknown to the Debtor, Rodriguez and/or

7  Languare, on or about January 28, 2011, Arkabar and/or Howard

8  recorded with the Los Angeles County's Recorder's Office as

9  Instrument No. 20110158023 a grant deed transferring ownership

10  interest from the Debtor to "Pedro Rogelio Cardenas" and the

11  Debtor as joint tenants with respect to the Pendleton Property

12  (the "January 2011 Pendleton Deed").   A copy of the January 2011

13  Pendleton Deed is attached hereto and is incorporated herein as

14  Exhibit "16."   **THIS WAS AND IS A FORGERY.**

15      AM.   The January 2011 Pendleton Deed was and is a fraudulent

16  document containing forged signatures. At no time did the Debtor

17  sign that document.  At no time had the Debtor ever meet or speak

18  with "Pedro Rogelio Cardenas."[1]

19      AN.   Also, and unbeknown to the Debtor, Rodriguez and/or

20  Languare, on or about January 28, 2011, Arkabar and/or Howard

21  recorded with the Los Angeles County's Recorder's Office as

22  Instrument No. 20110158024 a grant deed transferring ownership

23  interest from Rodriguez to "Pedro Rogelio Cardenas" and Rodriguez

24  as joint tenants with respect to the Abbott Property (the

25  _____

26     [1] Rosendo Gonzalez of Gonzalez & Associates, P.L.C., the
Debtor's proposed counsel, is in the process of obtaining the

27  information/documentation from the California Secretary of State
with respect to Arturo Sanchez, Jr., the notary public, that

28  purportedly notarized the documents in question.

1  "January 2011 Abbott Deed").  A copy of the January 2011 Abbott

2  Deed is attached hereto and is incorporated herein as Exhibit

3  "17."  **THIS WAS AND IS A FORGERY**.

4      AO.  The January 2011 Abbott Deed was and is a fraudulent

5  document containing forged signatures.  At no time did Rodriguez

6  (or his spouse) sign that document.  At no time had Rodriguez (or

7  his spouse) ever meet or speak with "Pedro Rogelio Cardenas.[2]

8      AP.  Apparently, and concurrently with the recording of

9  those two "forged" documents and on or about January 27, 2011, a

10  "Pedro Rogelio Cardenas" filed for bankruptcy protection under

11  Chapter 7 of the Bankruptcy Code (USBC Case No. 11-13529).  *See*,

12  paragraph no. 17(b)(1), page 9 of the Motion for Relief.

13      AQ.  Again and to be clear, neither the Debtor nor Rodriguez

14  had any knowledge, notice or involvement with Pedro Rogelio

15  Cardenas in any purported transfer or bankruptcy filing.

16      AR.  In view of the situation created, on May 28, 2011, the

17  Debtor, in *pro per*, sought bankruptcy protection [improperly

18  under Chapter 13 in view of the amount of secured debt].

19      AS.  On or about May 19, 2011, East West Bank filed the two

20  motions for relief from the automatic stat with respect to the

21  Abbott Property and Pendleton Property.

22  ///

23  ///

24  ─────────────────

25  [2] It should be noted that prior to the commencement of this
bankruptcy case and on or about October 17, 2008, the Debtor

26  executed a grant deed transferring the ownership interest in the
Abbott Property to Rodriguez (and his spouse); the deed was

27  recorded with the Los Angeles County's Recorder's Office as
Instrument No. 20082125172 on or about December 3, 2008.  *See*,

28  Exhibit "3" to the Motion for Relief from Stay.

## II.

### THIS COURT SHOULD DENY MOVANT'S MOTION

### SINCE THERE IS EQUITY IN THE ABBOTT PROPERTY

### [AS WELL AS THE PENDLETON PROPERTY]

### AND THE MOVANT IS ADEQUATELY PROTECTED

A.    In the Motion, East West Bank alleges that its debt secured by the Abbott Property is in the amount of $903,222.21 as of May 18, 2011.  *See*, paragraph no. 6, page 7 of the Motion for Relief.

B.    The Debtor disputes that this is the actual amount owing in view of East West Bank's conduct [commencing with contending that insurance was due and that there were arrears in 2009 when they were not and refunding/returning the mortgage payments in 2010].

C.    The Debtor did not set forth any evaluation for the Abbott Property.  *See*, paragraph no. 10, page 8 of the Motion for Relief.

D.    As set forth in the Declaration of Alberto A. Romero, a licensed real estate broker with Nu Vision Real Estate, Inc., the Abbott Property has a fair market value of approximately $1,150,000.

E.    Bankruptcy Code section 362(d)(1) [11 U.S.C. § 362(d)(1)] states that relief from the automatic stay is to be granted for cause.  Specifically included in the definition of "cause" are the determinations: (i) whether there is adequate protection, (ii) whether there is equity in the property, and (iii) whether the property is necessary for reorganization.  11

1   U.S.C. § 362(d)(1) and (2); *see also, In re Liona Corp., N.V.*, 68

2   B.R. 761, 767 (Bankr. E.D. Pa. 1987).

3       F.   The amount of equity a debtor has in a piece of real

4   property is determined by the amount the property's value exceeds

5   the amount of the liens against it.  *In re Faires*, 34. B.R. 548,

6   551-52 (Bankr. W.D. Wash. 1983); *In re La Jolla Mortgage Fund*, 18

7   B.R. 283, 290 (Bankr. S.D. Cal. 1982).   If the total amount of

8   encumbrances exceeds the property's fair market value, the

9   property has no equity.

10      G.   An "equity cushion" is defined for purposes of 11

11  U.S.C. § 362(d)(1) as the value in the property securing the

12  debt, above the amount owed to the secured party requesting

13  relief from the stay and the amount owed any secured parties

14  senior to the moving party.   *In re Mellor*, 734 F.2d 1396, 1400

15  fn.2 (9th Cir. 1984).

16      H.   Here, East West Bank contends that it is owed about

17  $900,000 with respect to the Abbott Property.  Using Mr. Romero's

18  evaluation [and none provided by East West Bank], **there is an**

19  **"equity cushion" in the Abbott Property, protecting East West**

20  **Bank's secured debt, of about $250,000.**

21      I.   As such, the amount of equity in the Property is

22  sufficient to protect East West Bank's interest.   Therefore,

23  relief from the automatic stay should not be granted.

24  ///

25  ///

26  ///

27  ///

28  ///

1

III.

2    **AS PART OF THE REORGANIZATION EFFORTS, THE DEBTOR**

3    **NEEDS THE ABBOTT PROPERTY [AS WELL AS THE PENDLETON**

4    **PROPERTY] AND IS AGREEABLE TO PAY EAST WEST BANK**

5    **THE NET RENTAL AMOUNTS COLLECTED FROM THE ABBOTT**

6    **PROPERTY AS ADEQUATE PROTECTION**

7

8    A.    As before and prior to the commencement of this

9    bankruptcy case, the Debtor anticipates that the net amount of

10   the rental income [after paying utilities and insurance] should

11   be about the same amount required under the promissory note of

12   $5,200.

13   B.    In this respect, the Debtor is agreeable to pay on a

14   monthly basis to East West Bank the net rental income for the

15   Abbott Property [as well as the Pendleton Property].

16   C.    Anticipating the conversion to Chapter 11, the Debtor

17   has already closed the prior bank accounts and opened new

18   accounts to collect and deposit the rental income from the two

19   properties [and to make the required disbursements].

20   D.    In fact, on May 30, 2011, Rosendo Gonzalez of Gonzalez

21   & Associates, P.L.C., the Debtor's proposed counsel in this case

22   ("Gonzalez"), wrote a letter, sent via facsimile and first class

23   mail, to Nathan F. Smith of Malcolm Cisneros, ALC, East West

24   Bank's counsel in this case ("Smith"), introducing Gonzalez's

25   involvement, informing of conversion to Chapter 11 and proposing

26   to turnover the net rental income for the properties.  A copy of

27   Gonzalez's May 30, 2011 letter to Smith is attached hereto and is

28   incorporated herein as Exhibit "18."

1    E.    In the May 30, 2011 letter, Gonzalez also requested a

2    two weeks' extension of the hearing on this motion in view of the

3    new involvement, conversion and immediate effort to address the

4    dispute.    However, and as of the date of this letter, Gonzalez

5    has not received a response from Smith.

6

7    **IV.**

8    **THERE IS NO "CAUSE" FOR RELIEF OF THE AUTOMATIC**

9    **STAY TO BE GRANTED AT THIS TIME**

10

11    A.    First and as discussed herein above, there is no

12    dispute that there is an equity value in the Abbott Property of

13    approximately $250,000.

14    B.    Second, the Debtor is willing and agreeable to pay East

15    West Bank as adequate protection [even though not required in

16    view of the existing equity cushion] the net monthly rental

17    income from the two properties.

18    C.    Third, the Debtor needs the two properties in question

19    in order to reorganize and propose a plan of reorganization.

20    D.    In spite of those undisputed facts, East West Bank

21    solely contends that there is "cause" for the relief from stay

22    due to the fact that in 2008, the Debtor transferred the

23    ownership interest to Rodriguez with respect to the Abbott

24    Property.    *See*, paragraph 3(a)(2)(d), page 3 of the Motion for

25    Relief.

26    E.    However, this was clearly not a fraudulent transfer

27    since Rodriguez actually paid the $310,000 initial payment in

28    July 2007 for the Abbott Property [as well as a number of

1  subsequent payments].  Morever and just as important, East West
2  Bank has always known this by its receipt of numerous payments
3  from Rodriguez in 2007, 2008, 2009 and 2010.  The Debtor and
4  Rodriguez now recognize that said transfer required East West
5  Bank's written acceptance [not simply its knowledge, notice and
6  implicit acceptance] and are willing to seek that written
7  acceptance and/or to transfer title back to the Debtor.

8      F.   Finally, East West Bank contends that there is "cause"
9  for the relief from stay due to the purported fact that on
10 September 5, 2008, a "Jose C. Rodriguez" filed for bankruptcy
11 protection under Chapter 13 of the Bankruptcy Code (USBC Case No.
12 2:08-24340).  *See*, paragraph 17(b), page 9 of the Motion for
13 Relief.  This is absolutely not true and this is nothing more
14 than East West Bank assuming that "Jose C. Rodriguez" in that
15 case is the same "Jose C. Rodriguez" in this case.

16     G.   Rodriguez [of this case] did not file for bankruptcy
17 protection on September 5, 2008.  This would have been obvious to
18 East West Bank, if it had checked its own files [since Rodriguez
19 has four other loans with East West Bank] and verified the Social
20 Security number.  In the alleged case, that debtor's number ends
21 with "1826."  A copy of the notice of bankruptcy filing for that
22 reference case is attached hereto and is incorporated herein as
23 Exhibit "19."

24     H.   However, Rodriguez [of this case] has a Social Security
25 number that ends with "1545."  A partial copy of Rodriguez's
26 Social Security card is attached hereto and is incorporated
27 herein as Exhibit "20."  Hence, there is no basis for East West
28 Bank's allegation.

1                                    **V.**

2                               **CONCLUSION**

3

4        The Movant's Motion should be denied.  The Movant has simply

5    failed to meet the requirements of section 362 of the Bankruptcy

6    Code.

7        In the alternative, the hearing on the Movant's Motion

8    should be continued for a short time for an evidentiary hearing

9    on the value of the Property and the determination of the debt of

10   East West Bank.

11   DATED:  June 6, 2011          GONZALEZ & ASSOCIATES
                                    A Professional Law Corporation
12

13

14                                  By: _____
15                                      ROSENDO GONZALEZ
                                        Counsel for Ana Espana, Debtor and
16                                      Debtor-in-Possession

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF ANA ESPANA

2

3     I, Ana Espana, declare:

4     1.   I  am the debtor in this bankruptcy case.   I have

5  personal knowledge of the following facts or I have gained

6  knowledge, and if called as a witness, I could and would testify

7  competently thereto.

8     2.   This case was commenced with the filing of a voluntary

9  petition for protection under Chapter 13 of Title 11 of the

10 United States Bankruptcy Code on April 28, 2011.

11    3.   I commenced the Chapter 13 case *in pro per.*  I did not

12 file the required schedules and statement of financial affairs.

13    4.   Kathy A. Dockery was appointed as the Chapter 13

14 trustee (the "Trustee").

15    5.   The initial meeting of creditors was scheduled for May

16 27, 2011.  I appeared and informed the Trustee that she was in

17 the process of employing counsel and filing motion to convert to

18 Chapter 11.

19    6.   The initial May 27, 2011 meeting of creditors was

20 continued (for the Debtor to file the motion to convert and

21 substitution of counsel).

22    7.   On or about June, 3, 2011, I filed: (i) a motion to

23 convert the case from Chapter 13 to Chapter 11, (ii) proposed

24 order on the motion to convert, (iii) substitution of counsel

25 form, and (iv) new fully completed petition, schedules and

26 statement of financial affairs.

27 ///

28 ///

1       8.   Prior to the commencement of this bankruptcy case, Jose

2   C. Rodriguez ("Rodriguez") and I entered into an agreement for

3   the purchase of the real property commonly described as 4271

4   Pendleton Avenue, Lynwood, California 90262 (the "Pendleton

5   Property") for the amount of $1,025,000.

6       9.   As part of the purchase of the Pendleton Property,

7   Rodriguez and I also entered into a transaction for the purchase

8   of the real property commonly described as 4874-4878 Abbot Road,

9   Lynwood, California 90262 (the "Abbott Property") for the amount

10  of $1,205,000.  The two [income rental] properties are located

11  next to each other.

12      10.  With respect to the purchase of the Abbott Property,

13  Rodriguez contributed approximately $310,000.  Similarly,

14  Rodriguez contributed approximately $310,000 for the purchase of

15  the Pendleton Property.  However, and due to the requirements of

16  East West Bank, title and loan for both properties were initially

17  taken under my name.

18      11.  In that respect, on or about July 23, 2007, I entered

19  into a promissory note with East West Bank in the principal

20  amount of $770,000 for the Abbott Property (the "Abbott

21  Note")(Loan No. 89222493).  Similarly, and on the same date, I

22  entered into a promissory note with East West Bank in the

23  principal amount of $770,000 for the Pendleton Property (the

24  "Pendleton Note")(Loan No. 89222491).

25      12.  On or about July 23, 2007, I also executed a deed of

26  trust as security for the Abbott Note for the benefit of East

27  West Bank (the "Abbott Deed of Trust").  Similarly, and on the

28  same date, I executed a deed of trust as security for the

1 │ Pendleton Note for the benefit of East West Bank (the "Pendleton

2 │ Deed of Trust").

3 │    13.   After the execution of the Notes and Deeds of Trust,

4 │ Rodriguez and I made the monthly payments with respect to the

5 │ Abbott and Pendleton properties to East West Bank, whether in

6 │ person, check, money order or cashier's check for 2007 and 2008.

7 │ In addition, Rodriguez and I obtained insurance for the two

8 │ properties with Farmers Insurance Company.

9 │    14.   With respect to 2009, Rodriguez and I made all of the

10 │ monthly payments for the Abbott Property.  Attached hereto and

11 │ collectively incorporated herein as Exhibit "1" are copies of all

12 │ of the East West Bank's receipts for 2009 showing the payments

13 │ for the Abbott Property [Loan No. 89222493].

14 │    15.   In addition, attached hereto and collectively

15 │ incorporated herein as Exhibit "2" are copies of the actual

16 │ cashier's checks and checks paid by Rodriguez and I to East West

17 │ Bank for 2009 for the Abbott Property [Loan No. 89222493].

18 │    16.   Similarly, and with respect to 2009, Rodriguez and I

19 │ made all of the monthly payments for the Pendleton Property.

20 │ Attached hereto and collectively incorporated herein as Exhibit

21 │ "3" are copies of all of the East West Bank's receipts for 2009

22 │ showing the payments for the Pendleton Property [Loan No.

23 │ 89222491].

24 │    17.   In addition, attached hereto and collectively

25 │ incorporated herein as Exhibit "4" are copies of the actual

26 │ cashier's checks and checks paid by Rodriguez and I to East West

27 │ Bank for 2009 for the Pendleton Property [Loan No. 89222491].

28 │ ///

18.   In addition to making the mortgage payments in 2009 for the Abbott Property, Rodriguez and I also obtained the required insurance for the Abbott Property.  Attached hereto and collectively incorporated herein as Exhibit "5" are copies of "Accord Evidence of Property Insurance" with Farmers Insurance Company showing coverage for the period between December 1, 2008, through December 1, 2010.

19.   Similarly, in addition to making the mortgage payments in 2009 for the Pendleton Property, Rodriguez and I also obtained the required insurance for the Pendleton Property.  Attached hereto and collectively incorporated herein as Exhibit "6" are copies of "Accord Evidence of Property Insurance" with Farmers Insurance Company showing coverage for the period between December 1, 2008, through December 1, 2010.

20.   Inexplicably, in the mortgage statement for July 20, 2009, issued by East West Bank for the Pendleton Property, it actually represented that East West Bank had advanced and paid $4,604 in insurance.  A copy of East West Bank's July 20, 2009 statement for the Pendleton Property is attached hereto and is incorporated herein as Exhibit "7."

21.   That was clearly a charge that was not necessary or required and was in direct contradiction of the evidence [insurance coverage obtained and paid by Rodriguez and I].

22.   Again, inexplicably in view of the payments made by Rodriguez and I for 2009 for the Abbott Property and the Pendleton Property [as well as obtaining the required insurance coverage], on or about August 10, 2009, a notice of default was recorded by East West Bank with respect to the Pendleton Property

1   indicating that the amount of arrears was $20,775.80.  A copy of

2   the notice of default is attached hereto and is incorporated

3   herein as Exhibit "9."

4        23.  East West Bank's August 10, 2009 notice of default was

5   specifically contradicted by the mortgage payments made by the

6   Debtor and Rodriguez with respect to the Pendleton Property for

7   2009.

8        24.  A notice of foreclosure was apparently recorded with

9   the Los Angeles County's Recorder's Office setting the

10  foreclosure sale for December 23, 2009, for the Pendleton

11  Property.

12       25.  A copy of a letter dated December 14, 2009, from

13  Cynthia Robinson, special asset coordinator for East West Bank

14  ("Robinson"), to Ruben Languare, a friend of mine who helped me

15  in view of my inability to fluently speak, read and write in

16  English ("Languare"), is attached hereto and is incorporated

17  herein as Exhibit "10."

18       26.  In the December 14, 2009 letter, Robinson represented

19  that the foreclosure sale for the Pendleton Property had been

20  scheduled for December 23, 2011, and that payments for October,

21  November and December 2009 in the collective amount of $15,352.98

22  were missing.  Improperly adding [since the payments had been

23  made] late charges and foreclosure fees and costs, the total

24  amount to reinstate the loan was set at $25,822.44.

25       27.  In spite of the fact that all required payments had

26  been made for the Pendleton Property, on ora bout December 18,

27  2009, Rodriguez and I paid $15,422.44 to East West Bank, plus

28  received credit for two payments each in the amount of $5,200

1  that had been made to East West Bank.  Copies of the: (i)

2  December 11, 2009 cashier's check no. 202538936 in the amount of

3  $5,200 [purchased by Rodriguez and paid to East West Bank], (ii)

4  December 14, 2009 check no. 1028 in the amount of $5,200

5  [personal account of Rodriguez and payable to East West Bank],

6  (iii) December 18, 2009 cashier's check no. 426285740 in the

7  amount of $15,422.44 [purchased by Jose Rodriguez and paid to

8  East West Bank], and (iv) the East West Bank's December 18, 2009

9  loan payment receipt in the amount of $26,622.44 are attached

10  hereto and collectively incorporated herein as Exhibit "11."

11      28.  **Again and to be clear, Rodriguez and I paid for**

12  **insurance, late charges and foreclosure related fees and costs**

13  **for 2009 for the Pendleton Property even though there was no**

14  **factual or legal basis for East West Bank to have demanded those**

15  **fees and costs.**

16      29.  For 2010 and with respect to the Abbott Property,

17  Rodriguez and I made the monthly mortgage payments to East West

18  Bank for January, February, March and April 2010. Copies of East

19  West Bank's loan payment receipts for January, February, March

20  and April 2010 are attached hereto and are collectively

21  incorporated herein as Exhibit "12."

22      30.  Similarly and with respect to the Pendleton Property

23  for 2010, Rodriguez and I made the monthly mortgage payments to

24  East West Bank for January, February, March, April, May, June and

25  July 2010. Copies of East West Bank's loan payment receipts for

26  January, February, March, April, May, June and July 2010 are

27  attached hereto and are collectively incorporated herein as

28  Exhibit "13."

1    31.   However, and inexplicably, East West Bank issued in

2   January, March and April 2010, four (4) cashier's checks

3   returning payments [for the Abbott Property] to Rodriguez.

4   Copies of the East West Bank's January, March and April 2010

5   cashier's checks made payable to Rodriguez are attached hereto

6   and are collectively incorporated herein as Exhibit "14."

7    32.   Similarly, and inexplicably, East West Bank issued in

8   March and June 2010, two (2) cashier's checks returning payments

9   [for the Pendleton Property] to Rodriguez.   Copies of the East

10  West Bank's March and June 2010 cashier's checks made payable to

11  Rodriguez are attached hereto and are collectively incorporated

12  herein as Exhibit "15."

13   33.   In spite of the payments made for 2010 for the Abbott

14  and Pendleton properties [which were partially refunded], East

15  West Bank set foreclosure sales for the two properties for May

16  2010.

17   34.   Confused, Languare, on my behalf of and on behalf

18  of Rodriguez, had a number of communications between May and

19  October 2010 with Robinson in attempt to figure out the reason

20  for East West Bank's return of the 2010 payments, East West

21  Bank's overcharges for 2009 and to add Rodriguez to the two

22  loans.

23   35.   Unable to resolve the situation, Rodriguez and I [now

24  desperate] sought in or about October 2010 the assistance of

25  China Arbakar Paul of Sell Express Real Estate ("Arbakar"), Dr.

26  Camile Howard ("Howard") and an attorney, Jack C. Huang

27  ("Huang").   These were individuals who were advertising and

28  promoting themselves as experts in real estate transactions

1    assisting distressed property owners in negotiations with

2    financial institutions.  Rodriguez and I paid $2,000 to Arkabar

3    and Howard for their assistance.

4        36.  Between October 2010 and January 2011, there were a

5    number of communications between Arkabar and Robinson in an

6    attempt to resolve the situation.

7        37.  However, and unbeknown to the Rodriguez, Languare and

8    I, on or about January 28, 2011, Arkabar and/or Howard recorded

9    with the Los Angeles County's Recorder's Office as Instrument

10   No.20110158023 a grant deed transferring ownership interest from

11   the Debtor to "Pedro Rogelio Cardenas" and the Debtor as joint

12   tenants with respect to the Pendleton Property (the "January 2011

13   Pendleton Deed").  A copy of the January 2011 Pendleton Deed is

14   attached hereto and is incorporated herein as Exhibit "16."  **THIS**

15   **WAS AND IS A FORGERY.**

16       38.  The January 2011 Pendleton Deed was and is a fraudulent

17   document containing forged signatures.  At no time did I sign

18   that document.  At no time had I ever meet or speak with "Pedro

19   Rogelio Cardenas."

20       39.  However, and unbeknown to Rodriguez, Languare and I, on

21   or about January 28, 2011, Arkabar and/or Howard recorded with

22   the Los Angeles County's Recorder's Office as Instrument

23   No.20110158024 a grant deed transferring ownership interest from

24   Rodriguez to "Pedro Rogelio Cardenas" and Rodriguez as joint

25   tenants with respect to the Abbott Property (the "January 2011

26   Abbott Deed").  A copy of the January 2011 Abbott Deed is

27   attached hereto and is incorporated herein as Exhibit "17."  **THIS**

28   **WAS AND IS A FORGERY.**



40.   Apparently, and concurrently with the recording of those two "forged" documents and on or about January 27, 2011, a "Pedro Rogelio Cardenas" filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code (USBC Case No. 11-13529).

41.   Again and to be clear, neither Rodriguez nor I had any knowledge, notice or involvement with Pedro Rogelio Cardenas in any purported transfer or bankruptcy filing.   I have never met or spoken with this individual.

42.   In view of the situation created, on May 28, 2011, I. in *pro per*, sought bankruptcy protection [improperly under Chapter 13 in view of the amount of secured debt].

43.   On or about May 19, 2011, East West Bank filed the two motions for relief from the automatic stat with respect to the Abbott Property and Pendleton Property.

44.   Anticipating the conversion to Chapter 11, I have already closed the prior bank accounts and opened new accounts to collect and deposit the rental income from the two properties [and to make the required disbursements].   Rodriguez has always helped and will continue to help me (for no charge) in the collection of the rents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of June, 2011, at Los Angeles, California.

ANA ESPANA

1                    <u>**DECLARATION OF JOSE C. RODRIGUEZ**</u>

2

3        I, Jose C. Rodriguez, declare:

4        1.    I  am a friend of Ana Espana, the debtor in this

5   bankruptcy case (the "Debtor").  I have personal knowledge of the

6   following facts or I have gained knowledge, and if called as a

7   witness, I could and would testify competently thereto.

8        2.    It is my understanding that this case was commenced by

9   Ana Espana with the filing of a voluntary petition for protection

10  under Chapter 13 of Title 11 of the United States Bankruptcy Code

11  on April 28, 2011.

12       3.    Prior to the commencement of this bankruptcy case, the

13  Debtor and I entered into an agreement for the purchase of the

14  real property commonly described as 4271 Pendleton Avenue,

15  Lynwood, California 90262 (the "Pendleton Property") for the

16  amount of $1,025,000.

17       4.    As part of the purchase of the Pendleton Property, the

18  Debtor and I also entered into a transaction for the purchase of

19  the real property commonly described as 4874-4878 Abbot Road,

20  Lynwood, California 90262 (the "Abbott Property") for the amount

21  of $1,205,000.  The two [income rental] properties are located

22  next to each other.

23       5.    With respect to the purchase of the Abbott Property, I

24  contributed approximately $310,000.  Similarly, I contributed

25  approximately $310,000 for the purchase of the Pendleton

26  Property.  However, and due to the requirements of East West

27  Bank, title and loan for both properties were initially taken

28  under the Debtor's sole name.

1       6.   In that respect, on or about July 23, 2007, the Debtor

2   entered into a promissory note with East West Bank in the

3   principal amount of $770,000 for the Abbott Property (the "Abbott

4   Note")(Loan No. 89222493).  Similarly, and on the same date, the

5   Debtor entered into a promissory note with East West Bank in the

6   principal amount of $770,000 for the Pendleton Property (the

7   "Pendleton Note")(Loan No. 89222491).

8       7.   On or about July 23, 2007, the Debtor also executed a

9   deed of trust as security for the Abbott Note for the benefit of

10  East West Bank (the "Abbott Deed of Trust").  Similarly, and on

11  the same date, the Debtor executed a deed of trust as security

12  for the Pendleton Note for the benefit of East West Bank (the

13  "Pendleton Deed of Trust").

14      8.   After the execution of the Notes and Deeds of Trust,

15  the Debtor and I made the monthly payments with respect to the

16  Abbott and Pendleton properties to East West Bank, whether in

17  person, check, money order or cashier's check for 2007 and 2008.

18  In addition, the Debtor and I obtained insurance for the two

19  properties with Farmers Insurance Company.

20      9.   With respect to 2009, the Debtor and I made all of the

21  monthly payments for the Abbott Property.  Attached hereto and

22  collectively incorporated herein as Exhibit "1" are copies of all

23  of the East West Bank's receipts for 2009 showing the payments

24  for the Abbott Property [Loan No. 89222493].

25      10.   In addition, attached hereto and collectively

26  incorporated herein as Exhibit "2" are copies of the actual

27  cashier's checks and checks paid by the Debtor and I to East West

28  Bank for 2009 for the Abbott Property [Loan No. 89222493].

11.   Similarly, and with respect to 2009, the Debtor and I made all of the monthly payments for the Pendleton Property. Attached hereto and collectively incorporated herein as Exhibit "3" are copies of all of the East West Bank's receipts for 2009 showing the payments for the Pendleton Property [Loan No. 89222491].

12.   In addition, attached hereto and collectively incorporated herein as Exhibit "4" are copies of the actual cashier's checks and checks paid by the Debtor and I to East West Bank for 2009 for the Pendleton Property [Loan No. 89222491].

13.   In addition to making the mortgage payments in 2009 for the Abbott Property, the Debtor and I also obtained the required insurance for the Abbott Property.  Attached hereto and collectively incorporated herein as Exhibit "5" are copies of "Accord Evidence of Property Insurance" with Farmers Insurance Company showing coverage for the period between December 1, 2008, through December 1, 2010.

14.   Similarly, in addition to making the mortgage payments in 2009 for the Pendleton Property, the Debtor and I also obtained the required insurance for the Pendleton Property. Attached hereto and collectively incorporated herein as Exhibit "6" are copies of "Accord Evidence of Property Insurance" with Farmers Insurance Company showing coverage for the period between December 1, 2008, through December 1, 2010.

15.   Inexplicably, in the mortgage statement for July 20, 2009, issued by East West Bank for the Pendleton Property, it actually represented that East West Bank had advanced and paid $4,604 in insurance.  A copy of East West Bank's July 20, 2009

1  statement for the Pendleton Property is attached hereto and is

2  incorporated herein as Exhibit "7."

3      16.  That was clearly a charge that was not necessary or

4  required and was in direct contradiction of the evidence

5  [insurance coverage obtained and paid by the Debtor and I].

6      17.  It appears that this may be a "tactic" of East West

7  Bank to advance insurance payment/coverage in spite of the fact

8  that the property owner has already obtained that property

9  insurance.  In fact, I also have four (4) other outstanding loans

10  with East West Bank for other properties and I have experienced

11  the same "tactic."  Attached hereto and collectively incorporated

12  herein as Exhibit "8" are copies of my purchase of insurance and

13  East West Bank's statement paying for the same property

14  insurance.

15      18.  Again, inexplicably in view of the payments made by the

16  Debtor and I for 2009 for the Abbott Property and the Pendleton

17  Property [as well as obtaining the required insurance coverage],

18  on or about August 10, 2009, a notice of default was recorded by

19  East West Bank with respect to the Pendleton Property indicating

20  that the amount of arrears was $20,775.80.  A copy of the notice

21  of default is attached hereto and is incorporated herein as

22  Exhibit "9."

23      19.  East West Bank's August 10, 2009 notice of default was

24  specifically contradicted by the mortgage payments made by the

25  Debtor and I with respect to the Pendleton Property for 2009.

26  ///

27  ///

28  ///

20.  A notice of foreclosure was apparently recorded with the Los Angeles County's Recorder's Office setting the foreclosure sale for December 23, 2009, for the Pendleton Property.

21.  In spite of the fact that all required payments had been made for the Pendleton Property, on or about December 18, 2009, the Debtor and Rodriguez paid $15,422.44 to East West Bank, plus received credit for two payments each in the amount of $5,200 that had been made to East West Bank.  Copies of the: (i) December 11, 2009 cashier's check no. 202538936 in the amount of $5,200 [purchased by me and paid to East West Bank], (ii) December 14, 2009 check no. 1028 in the amount of $5,200 [personal account of me and payable to East West Bank], (iii) December 18, 2009 cashier's check no. 426285740 in the amount of $15,422.44 [purchased by me and paid to East West Bank], and (iv) the East West Bank's December 18, 2009 loan payment receipt in the amount of $26,622.44 are attached hereto and collectively incorporated herein as Exhibit "11."

22.  **Again and to be clear, the Debtor and I paid for insurance, late charges and foreclosure related fees and costs for 2009 for the Pendleton Property even though there was no factual or legal basis for East West Bank to have demanded those fees and costs.**

23.  For 2010 and with respect to the Abbott Property, the Debtor and I made the monthly mortgage payments to East West Bank for January, February, March and April 2010. Copies of East West Bank's loan payment receipts for January, February, March and

///

1   April 2010 are attached hereto and are collectively incorporated

2   herein as Exhibit "12."

3       24.   Similarly and with respect to the Pendleton Property

4   for 2010, the Debtor and I made the monthly mortgage payments to

5   East West Bank for January, February, March, April, May, June and

6   July 2010. Copies of East West Bank's loan payment receipts for

7   January, February, March, April, May, June and July 2010 are

8   attached hereto and are collectively incorporated herein as

9   Exhibit "13."

10      25.   However, and inexplicably, East West Bank issued in

11  January, March and April 2010, four (4) cashier's checks

12  returning payments [for the Abbott Property] to me.  Copies of

13  the East West Bank's January, March and April 2010 cashier's

14  checks made payable to me are attached hereto and are

15  collectively incorporated herein as Exhibit "14."

16      26.   Similarly, and inexplicably, East West Bank issued in

17  March and June 2010, two (2) cashier's checks returning payments

18  [for the Pendleton Property] to me.  Copies of the East West

19  Bank's March and June 2010 cashier's checks made payable to me

20  are attached hereto and are collectively incorporated herein as

21  Exhibit "15."

22      27.   In spite of the payments made for 2010 for the Abbott

23  and Pendleton properties [which were partially refunded], East

24  West Bank set foreclosure sales for the two properties for May

25  2010.

26      28.   Confused, Languare, on behalf of the Debtor and my

27  behalf, had a number of communications between May and October

28  2010 with Robinson in attempt to figure out the reason for East

1    West Bank's return of the 2010 payments, East West Bank's

2    overcharges for 2009 and to add Rodriguez to the two loans.

3    Unable to resolve the situation, the Debtor and I [now desperate]

4    sought in or about October 2010 the assistance of China Arbakar

5    Paul of Sell Express Real Estate ("Arbakar"), Dr. Camile Howard

6    ("Howard") and an attorney, Jack C. Huang ("Huang").  These were

7    individuals who were advertising and promoting themselves as

8    experts in real estate transactions assisting distressed property

9    owners in negotiations with financial institutions.  The Debtor

10   and I paid $2,000 to Arkabar and Howard for their assistance.

11       29.  Between October 2010 and January 2011, there were a

12   number of communications between Arkabar and Robinson in an

13   attempt to resolve the situation.

14       30.  However, and unbeknown to the Debtor, Languare and I,

15   on or about January 28, 2011, Arkabar and/or Howard recorded with

16   the Los Angeles County's Recorder's Office as Instrument No.

17   20110158023 a grant deed transferring ownership interest from the

18   Debtor to "Pedro Rogelio Cardenas" and the Debtor as joint

19   tenants with respect to the Pendleton Property (the "January 2011

20   Pendleton Deed").  A copy of the January 2011 Pendleton Deed is

21   attached hereto and is incorporated herein as Exhibit "16."  **THIS**

22   **WAS AND IS A FORGERY.**

23       31.  However, and unbeknown to the Debtor, Languare and I,

24   on or about January 28, 2011, Arkabar and/or Howard recorded with

25   the Los Angeles County's Recorder's Office as Instrument

26   No.20110158024 a grant deed transferring ownership interest from

27   Rodriguez to "Pedro Rogelio Cardenas" and I as joint tenants with

28   respect to the Abbott Property (the "January 2011 Abbott Deed").

1  A copy of the January 2011 Abbott Deed is attached hereto and is

2  incorporated herein as Exhibit "17." **THIS WAS AND IS A FORGERY.**

3      32.   The January 2011 Abbott Deed was and is a fraudulent

4  document containing forged signatures.  At no time did I (or my

5  wife) sign that document.  At no time had I (or my wife) ever

6  meet or speak with "Pedro Rogelio Cardenas.

7      33.   Apparently, and concurrently with the recording of

8  those two "forged" documents and on or about January 27, 2011, a

9  "Pedro Rogelio Cardenas" filed for bankruptcy protection under

10  Chapter 7 of the Bankruptcy Code (USBC Case No. 11-13529).

11      34.   Again and to be clear, neither the Debtor nor I had any

12  knowledge, notice or involvement with Pedro Rogelio Cardenas in

13  any purported transfer or bankruptcy filing.  I have never met or

14  spoken with this individual.

15      35.   Finally, East West Bank contends that there is "cause"

16  for the relief from stay due to the purported fact that on

17  September 5, 2008, a "Jose C. Rodriguez" filed for bankruptcy

18  protection under Chapter 13 of the Bankruptcy Code (USBC Case No.

19  2:08-24340).  A copy of the notice of the commencement of that

20  reference case is attached hereto and is incorporated herein as

21  Exhibit "19."

22      36.   This is absolutely not true and this is nothing more

23  than East West Bank assuming that said "Jose C. Rodriguez" in

24  that case is me.

25      37.   I did not file for bankruptcy protection on September

26  5, 2008.  This would have been obvious to East West Bank if it

27  had checked its own files [since I have four other loans with

28  East West Bank] and verified the Social Security number.  In the

1  alleged case, that debtor's number ends with "1826."  I have a

2  Social Security number that ends with "1545."  A partial copy of

3  my Social Security card is attached hereto and is incorporated

4  herein as Exhibit "20."

5       I declare under penalty of perjury under the laws of the

6  United States of America that the foregoing is true and correct.

7       Executed this 6th day of June, 2011, at Los Angeles,

8  California.

9

10                                  JOSE C. RODRIGUEZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          <u>DECLARATION OF ALBERTO A. ROMERO</u>

2

3      I, Alberto A. Romero, declare:

4      1.   I  am a real estate broker licensed by the State of

5  California.  I an associated with Nu Vision Real Estate, Inc.

6  located at 7913 S. Madison Avenue, Paramount, California 90723.

7      2.   I am submitting this declaration in support of the

8  opposition of Ana Espana, the debtor in this bankruptcy case (the

9  "Debtor"), to the motions for relief from stay filed by East West

10 Bank.

11     3.   I have personal knowledge of the following facts or I

12 have gained knowledge, and if called as a witness, I could and

13 would testify competently thereto.

14     4.   With respect to the real property commonly described as

15 4874-4878 Abbot Road, Lynwood, California 90262 (the "Abbott

16 Property"), I have determined that the present fair market value

17 of this Property is approximately $1,150,000.

18     5.   With respect to the real property commonly described as

19 4271 Pendleton Avenue, Lynwood, California 90262 (the "Pendleton

20 Property"), I have determined that the present fair market value

21 of this Property is approximately $1,150,000.

22     6.   I have learned that each property has eight units and

23 each property has monthly rental income of about $10,500.

24     7.   I looked at sales of real estate properties in the

25 area, however, and in view of the lack of recent sale of

26 comparable commercial properties or large rental properties in

27 the immediate area, I did use the amount of monthly rental income

28 in determining the respective value of each property.

1      I declare under penalty of perjury under the laws of the

2  United States of America that the foregoing is true and correct.

3      Executed this 6th day of June, 2011, at Los Angeles,

4  California.

5

6                         ALBERTO A. ROMERO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 <u>DECLARATION OF ROSENDO GONZALEZ</u>

2

3     I, Rosendo Gonzalez, declare:

4     1.   I  am an attorney duly admitted to practice before this

5 Court and in the State of California.  I am a principal of

6 Gonzalez & Associates, P.L.C., proposed counsel for Ana Espana,

7 the debtor in this bankruptcy case (the "Debtor").  I have

8 personal knowledge of the following facts or I have gained

9 knowledge, and if called as a witness, I could and would testify

10 competently thereto.

11     2.   From my review of the filed pleadings, I have learned

12 that this case was commenced with the filing of a voluntary

13 petition for protection under Chapter 13 of Title 11 of the

14 United States Bankruptcy Code on April 28, 2011.

15     3.   The Debtor commenced the Chapter 13 case *in pro per*.

16 She did not file the required schedules and statement of

17 financial affairs.

18     4.   Kathy A. Dockery was appointed as the Chapter 13

19 trustee (the "Trustee").

20     5.   The initial meeting of creditors was scheduled for May

21 27, 2011.  It is my understanding that the Debtor appeared and

22 informed the Trustee that she was in the process of employing

23 counsel and filing motion to convert to Chapter 11.

24     6.   The initial May 27, 2011 meeting of creditors was

25 continued (for the Debtor to file the motion to convert and

26 substitution of counsel).

27 ///

28 ///

P:\home\3197\3197.005.oppstn East West motion relief [abbott].wpd

1        7.   On or about June, 3, 2011, the Debtor filed: (i) a

2    motion to convert the case from Chapter 13 to Chapter 11, (ii)

3    proposed order on the motion to convert, (iii) substitution of

4    counsel form, and (iv) new fully completed petition, schedules

5    and statement of financial affairs.

6        8.   On or about May 19, 2011, East West Bank filed the two

7    motions for relief from the automatic stat with respect to the

8    Abbott Property and Pendleton Property.

9        9.   On May 30, 2011, I wrote a letter, sent via facsimile

10   and first class mail, to Nathan F. Smith of Malcolm Cisneros,

11   ALC, East West Bank's counsel in this case ("Smith"), introducing

12   my involvement, informing of conversion to Chapter 11 and

13   proposing to turnover the net rental income for the properties.

14   A copy of my May 30, 2011 letter to Smith is attached hereto and

15   is incorporated herein as Exhibit "18."

16       10.   In the May 30, 2011 letter, I also requested a two

17   weeks' extension of the hearing on this motion in view of the new

18   involvement, conversion and immediate effort to address the

19   dispute.  However, and as of the date of this letter, I have not

20   received a response from Smith.

21       I declare under penalty of perjury under the laws of the

22   United States of America that the foregoing is true and correct.

23       Executed this 6th day of June, 2011, at Los Angeles,

24   California.

25

26                            ROSENDO GONZALEZ

27

28